## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                No. CR 12-0128 JB

HOMERO VARELA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Appeal from the Magistrate's Detention Order [Doc. 112], filed February 9, 2012 (Doc. 113)("Notice of Appeal"). The Court held a detention hearing on February 15, 2012. The primary issues are: (i) whether Plaintiff United States of America has proven by a preponderance of the evidence that Defendant Homero Varela is a flight risk, and that no condition or combination of conditions would reduce that risk to an acceptable level; and (ii) whether the United States has proven by clear-and-convincing evidence that H. Varela is a danger to the community, and that no condition or combination of conditions would reduce that danger to an acceptable level. The Court will affirm the Detention Order Pending Trial, filed February 9, 2012 (Doc. 112), issued by the Honorable Lorenzo F. Garcia, United States Magistrate Judge, which concluded that H. Varela is a flight risk and a danger to the community, because the Court believes that no condition or combination of conditions would reasonably assure his appearance or the safety of the community.

## FACTUAL BACKGROUND

H. Varela was born in October 1982 in Chihuahua, Mexico. See Pretrial Services Report at 2, disclosed February 2, 2012 ("Report"). He is one of three children. See Report at 2. Both H.

Varela's parents are in the United States on permanent resident alien status.  See Report at 2.  H. Varela entered the United States in 1987 and became a naturalized citizen sometime during the period of time between 2006 and 2008.  See Report at 2.  H. Varela possesses a valid passport.  See Report at 2.  He indicated that he last used the passport in November 2011 to visit Cancun, Mexico.  See Report at 2.  His wife, Blanca Varela, reported that he last visited Juarez, Mexico on January 14, 2012.  See Report at 2.  B. Varela was born in Durango, Mexico and was granted resident alien status in 2010.  See Report at 2.  H. Varela and B. Varela were married in Albuquerque, New Mexico in 2006.  See Report at 2.  The couple has been together since 2002.  See Report at 2.  The couple has two children, ages five and ten.  See Report at 2.  H. Varela owns two firearms, a handgun and a rifle, both of which were seized as part of this investigation.  See Report at 2.  H. Varela did not graduate from high school and did not obtain a General Equivalency Diploma.  See Report at 2.  H. Varela has been self-employed for the past six years in the business of raising, selling, and training race horses.  See Report at 2.  At the direction of counsel, H. Varela did not provide any information about his financial resources.  See Report at 3.  H. Varela consumes alcohol on a daily basis, with H. Varela reporting approximately one alcoholic beverage, a beer, per day and with B. Varela reporting approximately six beers per day.  See Report at 3.  H. Varela attended counseling for a period of three to six months in 2009 for temper-related issues.  See Report at 3.  Once in 2002 and twice in 2009, H. Varela faced charges regarding battery against a household member.  See Report at 5.  These charges were all dismissed.  See Report at 5.  H. Varela has no other criminal history.  See Report at 5.  H. Varela voluntarily self-surrendered to authorities for the current charges.  See Report at 1.

In support of the arrest warrants in this case, Drug Enforcement Administration ("DEA") agent Gerald P. Maestas asserted that H. Varela leads an Albuquerque-based drug trafficking

organization.  See Affidavit of Gerald P. Maestas ¶ 2, at 1 (executed January 25, 2012), filed February 11, 2012 (Doc. 118-1)("Maestas Aff.").  Maestas represents that H. Varela "is a member or associate of the Sinaloa Drug Cartel, which is one of numerous, highly-organized and dangerous criminal organizations in the Republic of Mexico responsible for the importation of large quantities of controlled substances into the United States."  Maestas Aff. ¶ 2, at 1.  Maestas notes that H. Varela "is associated with several powerful Sinaloa Cartel leaders, including but not limited to Jose Antonio Torres-Marrufo, who is well known to federal law enforcement as the Sinaloa Cartel's 'Hit Team' leader" and who is responsible for and organizes murders and assassinations.  Maestas Aff. ¶ 2, at 1-2.  Some of the underlying criminal conduct in the investigation involved an alleged firearm transaction for which H. Varela provided financial assistance.  See Maestas Aff. ¶ 33, at 18.  That transaction allegedly involved "twenty (20) fully automatic AK-47 type machine guns, ten (10) 9mm Beretta pistols and ten (10) .308 caliber rifles."  Maestas Aff. ¶ 33, at 8.  H. Varela allegedly would change out one of his cellular telephones on a monthly basis to avoid detection.  See Maestas Aff. ¶ 34, at 18-19.  DEA agents allegedly purchased a pound of methamphetamine from H. Varela on three separate occasions in 2011.  See Maestas Aff. ¶¶ 38-40, at 20.  The DEA agents allegedly paid, in total, approximately $51,000 for the methamphetamine.  See Maestas Aff. ¶¶ 38-40, at 20.  During one telephone conversation, federal agents determined that H. Varela likely planned to supply an individual with twenty kilograms of cocaine.  See Maestas Aff. ¶ 91, at 33.  On another occasion, federal agents determined that one individual likely supplied 300 pounds of marijuana to H. Varela.  See Maestas Aff. ¶ 131, at 42.

## PROCEDURAL BACKGROUND

A federal grand jury handed down a twenty-nine count indictment on January 25, 2012.  See Indictment (Doc. 2).  H. Varela was charged with the following Counts: (i) Count 1 - conspiracy to

distribute controlled substances in violation of 21 U.S.C. § 846; (ii) Counts 2 through 4 - distribution of fifty grams and more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); (iii) Count 5 - conspiracy to launder money in violation of 18 U.S.C. § 1956(h); (iv) Count 6 - money laundering in violation of 18 U.S.C. § 1957; and (v) Counts 15 through 29 - use of a telephone to facilitate a drug trafficking offense in violation of 21 U.S.C. § 843(b).  See Indictment at 1-3, 8-9.  The United States seeks forfeiture of "at least $15,000,000 in U.S. currency" from H. Varela and his co-Defendants.  Indictment at 11.

On February 2, 2012, pretrial services issued its Report regarding the appropriateness of pretrial release.  It recommended pretrial detention based on H. Valera's risk of flight for the following reasons: (i) conflicting statements he gave regarding his foreign travel; (ii) vague and unanswered questions regarding his finances; and (iii) his possession of a valid passport.  See Report at 4.  It recommended pretrial detention based on H. Valera's danger to the community for the following reasons: (i) the nature of the alleged offense; (ii) his arrest and conviction history; (iii) his history of domestic violence; (iv) indications of unresolved alcohol abuse; and (v) his history of involvement and association with a Mexican drug trafficking organization.  See Report at 4.  On February 9, 2012, Judge Garcia held a hearing whether to detain H. Varela.  See Clerk's Minutes at 1, filed February 9, 2012 (Doc. 111).  Judge Garcia took judicial notice of the Report, the pleadings in this case, and the Maestas Affidavit.  See Report at 1.  On February 2, 2012, Judge Garcia found that: (i) there is a serious risk that H. Varela will not appear; and (ii) there is a serious risk that H. Varela will endanger the safety of another person or the community.  See Detention Order Pending Trial at 2, filed February 9, 2012 (Doc. 112).

As part of the proceedings before Judge Garcia, the parties stipulated that a rebuttable presumption under 18 U.S.C. § 3142 applies and that there is a presumption of detention.  See

Findings of Fact and Conclusions of Law ¶ 2, at 2, filed February 10, 2012 (Doc. 114)("Findings").

Judge Garcia noted that the Indictment and other related documents indicate that the alleged crimes

involve "kilo quantities of cocaine, marijuana, and methamphetamine."  Findings ¶ 4, at 2.  Judge

Garcia notes that federal agents intercepted telephone calls involving the transfer of weapons for

payment of drug debt, including "a number of fully automatic AK 47s assault rifles and UZI

submachine guns."  Findings ¶ 4, at 2.  Judge Garcia found that "[t]he nature and circumstances of

the crimes implicate Varela in the Mexican Sinaloa Cartel, one of the largest and deadliest drug

trafficking organizations in the North American continent."  Findings ¶ 5, at 2.  Judge Garcia

concluded that "[t]he Sinaloa Cartel is involved in large-scale drug trafficking and has been

implicated in multiple brutal deaths in the Republic of Mexico and elsewhere as part of the ongoing

conflicts for control of the international drug trade."  Findings ¶ 5, at 2.  Judge Garcia found, based

on the Indictment returned against H. Varela and his co-Defendants, that the weight of the evidence

against H. Varela is substantial.  See Findings ¶ 6, at 3.  Judge Garcia concluded that H. Varela's

"assets, vehicles and ownership, including ownership of a number of high-priced racehorses, show

that Varela enjoys a lifestyle well beyond his ability to pay for it based on his reported income."

Findings ¶ 8, at 3.  Regarding the seriousness of the offense, Judge Garcia found that, "given the

quantity of money allegedly attributed to the drug trafficking activities, this present case is one of

the largest drug trafficking cases before this Court in recent memory."  Findings ¶ 11, at 4.  Judge

Garcia concluded:

> This case does not involve a single or two-time sale of drugs, but, rather, ongoing
> drug activity on a major scale with supplies extending from the Republic of Mexico
> to multiple states in the United States.  As earlier indicated, given the alleged
> involvement of the Sinaloa Cartel, and especially Cartel "hit team enforcers," there
> is a tremendous danger that the community will suffer should these alleged activities
> continue while Varela is awaiting trial.

Findings ¶ 11, at 4.  Judge Garcia concluded that H. Varela had not overcome the presumption of detention.  See Findings ¶¶ 12, 14, at 4-5.  He found: "At most, Varela proposes that he be released on his own to live with his spouse who is the victim of three prior domestic violence charges, and that he be put on electronic monitoring."  Findings ¶ 12, at 4.  Judge Garcia stated: "Given the fact that the international border is a few hours away, any individual who had an incentive to flee could easily do so, and the GPS monitor would not prevent that conduct.  The significant penalties Varela faces, if convicted, may well prompt him to flee."  Findings ¶ 13, at 4.

On February 9, 2012, H. Varela filed his Notice of Appeal.  H. Varela asserts that he "is a naturalized citizen with substantial family ties in Bernalillo County, New Mexico."  Notice of Appeal at 2.  He notes that he "voluntarily self surrendered to authorities on January 31, 2012 once he realized a warrant was issued for his arrest."  Notice of Appeal at 1.  He represents that he "understands and appreciates the serious consequences of flight, and the effect it would have on his ability to defend himself on these charges."  Notice of Appeal at 2.  He requests that the Court release him "on the most restrictive conditions possible, with electronic monitoring and home confinement."  Notice of Appeal at 2.

On February 11, 2012, the United States filed its United States' Brief in Support of Motion for Pre-Trial Detention.  See Doc. 118 ("Brief in Support of Detention").  The United States seeks H. Varela's continued pretrial detention.  See Brief in Support of Detention at 1.  It notes that there is a presumption of detention against H. Varela.  See Brief in Support of Detention at 1.  The United States asserts that, notwithstanding his agreement to restrictive conditions, he remains individually and collectively a danger to other persons and the community.  See Brief in Support of Detention at 2.  It also contends that H. Varela poses a risk of flight.  See Brief in Support of Detention at 2.  The United States argues that "[t]he presumption reflects Congress' findings that drug traffickers

often have the resources and foreign contacts to escape to other countries, as well as strong incentives to continue in the drug trade." Brief in Support of Detention at 3 (quoting <u>United States v. Moreno</u>, 30 F.3d 127, 1994 WL 390091, at *2 (1st Cir. 1994)(unpublished table decision)). The United States notes that, even if H. Varela successfully rebuts the presumption of detention, the Court may still consider the evidentiary weight of that presumption depending "on how closely defendant's case resembles the congressional paradigm." Brief in Support of Detention at 3 (quoting <u>United States v. Moreno</u>, 1994 WL 390091, at *2). The United States asserts that "[t]his case involves significant drug trafficking activities, and the possession and attempted transportation of firearms." Brief in Support of Detention at 5. It notes that H. Varela is the lead defendant in the case. <u>See</u> Brief in Support of Detention at 5.

The Court held a detention hearing on February 14, 2012. H. Valera asserted that his candor about his situation with federal authorities as well as his willingness to self-surrender weigh in favor of his pretrial release. <u>See</u> Transcript of Hearing at 2:23-4:14 (taken February 14, 2012)(Gorence)("Tr.").[1] H. Valera noted that the wider conspiracy alleged in the Maestas Affidavit is not part of the charges in the Indictment. <u>See</u> Tr. at 4:15-21 (Gorence). H. Valera emphasized that the Maestas Affidavit may contain varying levels of hearsay. <u>See</u> Tr. at 4:22-25 (Gorence). H. Valera represented that home confinement would be the most appropriate arrangement. <u>See</u> Tr. at 5:8-10 (Gorence). H. Valera asserted that he is a United States citizen and that working with his attorney on his case will be difficult if he is confined, but conceded that this consideration is probably not a factor in the detention analysis. <u>See</u> Tr. at 5:11-7:13 (Gorence). He noted that GPS monitoring will adequately mitigate any risk of flight. <u>See</u> Tr. at 5:25-6:8 (Gorence). H. Valera

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

asserted that Mexico is not a suitable place for him to flee, because of how dangerous the country is.  See Tr. at 7:14-24 (Gorence).  H. Valera represented that the United States is now in possession of his passport.  See Tr. at 8:3-15 (Gorence).  H. Valera noted that he has no criminal convictions.  See Tr. at 8:16-21 (Gorence).  The Court inquired whether the past domestic violence charges against H. Valera indicate that B. Valera would not be an adequate third-party custodian for H. Valera.  See Tr. at 9:9-15 (Court).  B. Valera then provided statements by way of proffer before the Court that she would be an adequate third-party custodian and would report H. Valera if he violated his conditions of pretrial release.  See Tr. at 11:1-12:15 (Gorence, B. Valera).

Regarding the dates of his travel to Mexico, H. Valera asserted that he made some of these trips in relation to his horse business and that there was confusion about the precise dates on which he traveled.  See Tr. at 12:24-14:4 (Gorence, Court, Probation Officer).  He argued that his responses regarding his finances were adequate given his Fifth Amendment privileges and the responsiveness of his questions regarding his employment.  See Tr. at 14:8-19 (Gorence).  He also noted that the responses were appropriate given the lack of discovery he has obtained about the United States' money laundering charges.  See Tr. at 14:8-19 (Gorence).  The Court inquired as to what family H. Varela still has in Mexico.  See Tr. at 14:20-22 (Court).  He responded that his parents are in the United States, his siblings are in this country, and that he has been in this country since he was five years old.  See Tr. at 14:23-15:5 (Gorence).  H. Varela noted that he has some grandparents and other extended family in Mexico.  See Tr. at 15:12-24 (Gorence).

The United States noted that H. Varela is the only defendant in this case who faces substantive drug charges and that those charges involve significant amounts of methamphetamine -- approximately three pounds of high purity methamphetamine.  See Tr. at 16:17-17:4 (Swainston).  It noted that these and other drugs had the potential of making it to the streets if he had not been

-8-

charged with these offenses. <u>See</u> Tr. at 17:5-8 (Swainston).  The United States noted that the Maestas Affidavit provides a good illustration of the magnitude of the government investigation in this case. <u>See</u> Tr. at 17:20-18:6 (Swainston).  The United States asserted that some of the drug transactions listed in the Maestas Affidavit, including those involving twenty-six kilograms of cocaine and 500 pounds of marijuana, are part of the conspiracy charges in this case. <u>See</u> Tr. at 18:7-15 (Swainston).  It argued that there are some significant concerns about allowing B. Valera to be a third-party custodian. <u>See</u> Tr. at 19:12-20:1 (Swainston).  The United States argued that, given the scale of the drug trafficking in which H. Valera allegedly engaged, his release poses a significant danger to the community in relation to the potential for drug trafficking. <u>See</u> Tr. at 20:11-14 (Swainston).  The United States contended that, given the nature of the drug trafficking trade, in which a person will have many outstanding monetary obligations and a variety of responsibilities, H. Valera's release poses a significant likelihood that he will engage in that activity once again. <u>See</u> Tr. at 20:18-21:12 (Swainston).  The United States asserted that, while it does not plan to bring firearm-related charges at this time, H. Valera played a significant role in some firearms transactions. <u>See</u> Tr. at 21:13-22:5 (Swainston).  The United States argued that, even if H. Valera chooses not to flee to Mexico, there are still many places within the United States to which he may flee. <u>See</u> Tr. at 24:7-14 (Swainston).  The United States contended that H. Valera was responsible for a sophisticated drug organization and has a great deal of intelligence. <u>See</u> Tr. at 24:14-21 (Swainston).  It asserted that, although H. Valera chose to self-surrender, he may consider flight as a viable option once he realizes the kinds of charges he faces. <u>See</u> Tr. at 25:3-26:8 (Swainston).  The United States noted that H. Valera still has strong enough ties to Mexico to have traveled there several times in the recent past. <u>See</u> Tr. at 26:9-20 (Swainston).  The United States agreed that H. Valera likely has extensive family ties in the Bernalillo County area. <u>See</u> Tr. at

26:24-27:5 (Swainston).  The United States contended that, in light of the activities in which H. Valera was allegedly engaged and his alleged connections to a Mexican drug cartel, there is a significant possibility he would take advantage of those connections to flee.  See Tr. at 27:11-28:5 (Swainston).  The United States noted that H. Varela would have had to be involved in drug trafficking for a large period of time to possess the amount of methamphetamine he is alleged to have possessed and to generate the amount of funds involved in this investigation.  See Tr. at 31:12-24 (Swainston).

The Court suggested releasing H. Varela to a halfway house with radio frequency ("RF") and GPS monitoring.  See Tr. at 35:1-7 (Court).  Both the parties agreed that home confinement with RF monitoring would be a more desirable and secure alternative.  See Tr. at 35:8-40:21 (Swainston, Court, Probation Officer, Gorence).  H. Valera suggested limiting his telephone usage and visitation to avoid any potential drug trafficking.  See Tr. at 41:3-42:6 (Gorence).  The United States noted that H. Valera allegedly switched out his cellular telephones numerous times in the course of the investigation, once every twenty-eight days, to avoid detection.  See Tr. at 43:19-44:8 (Swainston). The United States noted that B. Valera would not be a good third-party custodian to monitor his cellular telephone usage.  See Tr. at 44:14-45:10 (Swainston).  The United States asserted that it is equally concerned about the risk of flight and the danger to the community.  See Tr. at 45:18-46:13 (Swainston).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 through 3150, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).

-10-

At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence.  See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003).  "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).  To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g):

(g)     **Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning --

(1)     the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)     the weight of the evidence against the person;

(3)     the history and characteristics of the person, including --

(A)     the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B)     whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)     the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for

> potential forfeiture or offered as collateral to secure a bond, and shall
> decline to accept the designation, or the use as collateral, of property
> that, because of its source, will not reasonably assure the appearance
> of the person as required.

18 U.S.C. § 3142(g).

When a defendant is charged with certain crimes, however, a presumption might arise that the defendant is a flight risk and a danger to the community. See 18 U.S.C. § 3142(e)(3); United States v. Villapudua-Quintero, 308 F.App'x 272, 273 (10th Cir. 2009)(unpublished)(per curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders). 18 U.S.C. § 3142(e)(3)(A) provides that a presumption of detention arises when "there is probable cause to believe that the person committed" certain drug offenses, specifically "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46." 18 U.S.C. § 3142(e)(3)(A). The United States Court of Appeals for the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more." United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993). Accord United States v. Holguin, 971 F.Supp.2d 1082, 1088 (D.N.M. 2011)(Browning, J.).

To determine whether the defendant has rebutted the presumption of detention, a court must consider: (i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that would

be posed by release.  See 18 U.S.C. § 3142(g).  Should the defendant satisfy his or her burden of production, the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community.  See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.").  Notably, however, even if the defendant meets her burden of production, "the presumption remains a factor for consideration by the district court in determining whether to release or detain."  United States v. Stricklin, 932 F.2d at 1355.  Accord United States v. Mercedes, 254 F.3d at 436.

## ANALYSIS

There is a presumption, based on the nature of the charges in the Indictment, that H. Varela is a flight risk as well as a danger to the community and to others.  In the face of that presumption, H. Varela has successfully met his burden of production to show evidence that he is not a flight risk or danger to the community.  The Court concludes, however, that the United States has established: (i) by clear-and-convincing evidence that H. Varela is a danger to the community and others; and (ii) by a preponderance of the evidence that H. Varela is a flight risk.  The Court believes that there is no condition or combination of restrictions that would reasonably assure his appearance or the safety of the community.

## I.    THERE IS A PRESUMPTION OF DETENTION.

The parties do not dispute that a presumption of detention applies under 18 U.S.C. § 3142(e).  The charges H. Varela faces in Counts 2 through 4 for distribution of fifty grams and more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) trigger this presumption under 18 U.S.C. § 3142(e)(3)(A).  See Indictment at 2-3.  H. Varela faces a minimum of ten-years

imprisonment from these charges based on the alleged amount of drugs, see 21 U.S.C. § 841(b)(1)(A) ("[S]uch person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . ."),  and 18 U.S.C. § 3142(e)(3)(A) provides a presumption of detention for this drug offense when "a maximum term of imprisonment of ten years or more is prescribed," 18 U.S.C. § 3142(e)(3)(A).  Thus, the presumption of detention applies.

## II.     THE COURT CONCLUDES THAT H. VARELA IS A FLIGHT RISK AND A DANGER TO THE COMMUNITY.

The Court concludes that H. Varela should be detained pending trial.  The Court concludes that H. Varela has met his burden of production in the face of the statutory presumption favoring detention. See United States v. Stricklin, 932 F.2d at 1355 ("The defendant's burden of production is not heavy, but some evidence must be produced.").  While H. Varela has met his burden of production in response to the presumption given the restrictive conditions he has proposed, the presumption of detention "remains a factor for consideration by the district court in determining whether to release or detain." United States v. Stricklin, 932 F.2d at 1355 (citation omitted).  The Court further concludes that the United States has shown, by clear-and-convincing evidence, that he presents a danger to the community, and, by a preponderance of the evidence, that H. Varela presents a risk of flight. See United States v. Mercedes, 254 F.3d at 436; United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.").  The Court also concludes that no condition or combination of conditions will reduce to an acceptable level the risk of H. Varela's flight or his danger to the community.

The United States has alleged that H. Varela is the leader of a complex drug organization with significant ties to the Sinaloa Cartel.  The grand jury issued an Indictment charging H. Varela

-14-

with the following Counts: (i) Count 1 - conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846; (ii) Counts 2 through 4 - distribution of fifty grams and more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); (iii) Count 5 - conspiracy to launder money in violation of 18 U.S.C. § 1956(h); (iv) Count 6 - money laundering in violation of 18 U.S.C. § 1957; and (v) Counts 15 through 29 - use of a telephone to facilitate a drug trafficking offense in violation of 21 U.S.C. § 843(b).  See Indictment at 1-3, 8-9.  The United States seeks forfeiture of "at least $15,000,000 in U.S. currency" from H. Varela and his co-Defendants. Indictment at 11.  Based on the contents of the Maestas Affidavit, the scope and scale of this drug organization is significant, and more substantial than the majority of drug crimes which the Court handles.  While some of the information in the Maestas Affidavit is not directly related to the charges in the Indictment, there is evidence that H. Varela has connections to gun trafficking and people within the Sinaloa Cartel  who are essentially assassins.  H. Varela is charged in various counts with personal possession of large amounts of methamphetamine, which each carry a minimum sentence of ten-years imprisonment.

While the majority of H. Varela's family members appear to live in the Bernalillo County area, he still has some relatives in Mexico.  His ties to Mexico are significant enough that he has traveled to Mexico within the last several months.  While he states that it would not be wise or safe for him to travel there now, he must have felt safe traveling there recently, and he may conclude that the risks in Mexico are acceptable compared to the consequences of the criminal charges he faces. The Sinaloa Cartel might shelter him there.  Moreover, he and his wife gave some inconsistent statements about his travels to Mexico, although the Court finds the recency of his travels to Mexico more concerning given that he asserts that he has few ties to Mexico.  New Mexico is also a State that runs along the Mexican border, thereby increasing the risk of flight to Mexico and decreasing

-15-

the ability of law enforcement officers to timely respond to a defendant's flight.  While the Court

believes it could impose conditions that would at some level reduce the risk of H. Varela's flight or

danger to the community, it is not convinced that it could impose conditions that would reasonably

assure his appearance or reasonably assure that he will not be a danger to the community if released.

### A.     H. VARELA IS A FLIGHT RISK.

The Court finds, by the preponderance of the evidence, that H. Varela is a flight risk.  He

faces charges that carry substantial sentences, including significant mandatory minimums, because

he allegedly personally sold drugs.  The United States has estimated that his potential guideline

imprisonment range would "likely be as high as 235 to 293 months' imprisonment."  Brief in

Support of Detention at 4.  The United States has presented through the Maestas Affidavit and the

grand jury's Indictment weighty evidence of H. Varela's guilt.  The allegations in the case involve

conduct that is tied to Mexico, including connections to the Sinaloa Cartel.  While H. Varela has

significant ties to the Albuquerque area, he also still has some family in Mexico and has traveled

there very recently.  There were also some inconsistencies in his statements to pretrial services

regarding his travels to Mexico.  Because of these considerations, the Court finds by a

preponderance of the evidence that H. Varela is a flight risk.

### 1.     The Nature and Circumstances of the Crimes Charged Demonstrate H. Varela Is a Flight Risk.

The crimes with which H. Varela is charged carry substantial penalties.  For example, the

methamphetamine charges he faces in Counts 2 through 4 carry a statutory minimum of ten-years

imprisonment and a maximum sentence of life imprisonment.  See 21 U.S.C. § 841(b)(1)(A)

("[S]uch person shall be sentenced to a term of imprisonment which may not be less than 10 years

or more than life . . . .").  The United States has estimated that his potential guideline imprisonment

range would "likely be as high as 235 to 293 months' imprisonment." Brief in Support of Detention at 4. Additionally, there are some substantial monetary forfeiture issues in the case with the United States seeking $15,000,000 in forfeiture proceedings. While there are currently no charges relating to firearm offenses in the Indictment and the United States represented that the likelihood of bringing such charges at this time is low, it did not foreclose the possibility of bringing those charges at a later time. The Court concludes that this factor weighs in favor of detention.

### 2.      The Weight of the United States' Evidence Against H. Varela Shows He Is a Flight Risk.

The Maestas Affidavit demonstrates that "the weight of the evidence offered in support of [the charges against H. Varela is] significant," giving him many reasons to flee New Mexico or the United States if he is released pending trial. See United States v. Cisneros, 328 F.3d at 618. The Maestas Affidavit indicates that the preliminary phases of the investigation began as early as 2009. See Maestas Aff. ¶ 30, at 16 ("In 2009, agents of the DEA's Albuquerque District Office received information regarding the drug trafficking activities of Homero Varela."). Over eight confidential informants provided information related to this investigation. See Maestas Aff. ¶ 31, at 17. Federal agents began investigating alleged firearm transactions at least as early as March 25, 2011. See Maestas Aff. ¶ 33, at 18. In approximately mid-2011, federal agents began learning about how H. Varela facilitated his drug trafficking organization through cellular telephones. See Maestas Aff. ¶ 34, at 18-19. DEA agents allegedly purchased a pound of methamphetamine from H. Varela on three separate occasions in 2011. See Maestas Aff. ¶¶ 38-40, at 20. There are also a variety of other allegations of drug trafficking in the Maestas Affidavit that relate to the drug conspiracy charges asserted in Count 1, including a transaction that involves 244 kilograms of marijuana and twenty-six kilograms of cocaine. See Maestas Affidavit ¶ 44, at 21. The proffered evidence indicates that the

United States' case against H. Varela is formidable, making potential convictions and imprisonment a real possibility for him.  Thus, given the weight of the evidence against H. Varela, this factor weighs in favor of detention.

### 3.   H. Varela's History and Circumstances Show He Is a Flight Risk.

H. Varela's history and characteristics cut both ways, but offer further support for finding that he is a flight risk.  Some of his characteristics demonstrate ties to the community.  H. Varela is a naturalized citizen.  He has a variety of family members in the Bernalillo County area, although he admits he has some extended family in Mexico.  His siblings and parents all appear to reside in New Mexico.  He is married and has two children.  He operates a horse business here in New Mexico.  He has no criminal history related to narcotics trafficking.  He also voluntarily self-surrendered for the current charges.

On the other hand, while H. Varela is a naturalized citizen, he has some family members in Mexico and has visited Mexico within the past few months.  See United States v. Armstrong, 397 F.App'x 466, 468 (10th Cir. 2010)(unpublished)(noting that frequent travels to Mexico were relevant to determining risk of flight).  There were also inconsistencies in the information provided to pretrial services about when he last visited Mexico.  H. Varela did not provide any information to pretrial services about his financial resources.  Given the allegations in the case and the weight of the evidence against H. Varela, along with his recent travels to Mexico, it appears he has the financial resources to travel to Mexico if he chose to flee there.  See United States v. Cisneros, 328 F.3d at 618 (noting that it is a relevant consideration that the defendant had "the resources available to her to abscond to Mexico should she choose to do so").  While B. Varela asserts that she would be an adequate third-party custodian for H. Varela, the previous domestic assault charges B. Varela has had brought against him give the Court some pause.  Given the dynamics of their relationship,

-18-

which include physical abuse, she may not be able to control his behavior or be willing to report any violations of his terms of pretrial release to pretrial services.

In sum, by a preponderance of the evidence, H. Varela is a flight risk given the serious penalties he faces, the strength of the United States' case, and his ties to Mexico. There are also some issues as to H. Varela being forthcoming with pretrial services and with the Court. H. Varela has significant reason to abscond and avoid incarceration. Additionally, while he successfully met his burden of production in the face of the presumption of detention, the Court believes that presumption remains a relevant factor and that it weighs in favor of detention. See, e.g., United States v. Moreno, 1994 WL 390091, at *2 ("The presumption reflects Congress' findings that drug traffickers often have the resources and foreign contacts to escape to other countries, as well as strong incentives to continue in the drug trade."). The Court appreciates that H. Valera self-surrendered when he became aware of the current charges, but the Court must assess holistically his personal circumstances.

The Court has had poor results when it has released alleged leaders of other drug trafficking organizations. Despite their promises to appear and the imposition of a large amount of restrictive conditions, they often flee as a result of the length of the potential sentences they face. The Court is concerned that H. Varela has the resources, motive, and connections to flee to Mexico or disappear into the United States. He is a very smart man, and the Court is concerned that he would successfully flee if the Court were to release him.

### B.    H. VARELA IS A DANGER TO THE COMMUNITY.

Because the United States has shown probable cause supporting H. Varela's federal drug charges, the statutory presumption that H. Varela poses a danger to the community is triggered. Even though H. Varela has met his burden of production in response to that presumption given the

restrictive conditions he has proposed, the presumption remains a factor for the Court to consider in making its ultimate determination regarding detention.  See United States v. Stricklin, 932 F.2d at 1355 ("Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.").  Based on the allegations in the Maestas Affidavit, H. Varela personally participated in three separate transactions where he provided a pound of methamphetamine to DEA agents in each transaction.  See Maestas Aff. ¶¶ 38-40, at 20.  The amount of methamphetamine involved in those transactions, as well as the other allegations in the Maestas Affidavit regarding firearm and drug trafficking, strongly suggest that H. Varela has significant experience in drug trafficking.  Importantly, he is charged as the lead defendant in this case, which the United States has asserted was not by accident.  There are many facts and allegations connecting him to a powerful and violent Mexican drug cartel.  Even putting aside the gun trafficking allegations, which are less significant to the Court as there are no Counts in the Indictment relating to that conduct, H. Varela's drug trafficking activities provide reason to deem H. Varela a danger to the community.  See United States v. Pina-Aboite, 97 F.App'x 836, 836 (10th Cir. 2004)(unpublished)(citing United States v. Cook, 880 F.2d 1158, 1161 (10th Cir.1989))(recognizing that the 18 U.S.C. § 3142 "danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community").  The scope of the alleged drug trafficking activity is particularly concerning to the Court.  The amount of drug trafficking activity attributed to H. Varela is significant and poses a great potential danger to the community.  Consequently, the Court finds that, by clear-and-convincing evidence, H. Varela is a danger to the community.  Given the amount of money and drugs involved, the debts that H. Varela may owe in relation to his alleged drug trafficking may be significant.  If released, the temptation to return to drug trafficking to pay these

debts and to support himself will be too great.  In the end, the Court is convinced that the temptation will be too much.

## III.   THE COURT BELIEVES IT CANNOT REDUCE H. VARELA'S RISK OF NONAPPEARANCE TO AN ACCEPTABLE LEVEL EVEN WITH RESTRICTIVE CONDITIONS.

H. Varela has proposed a variety of restrictive conditions that would help mitigate his risk of nonappearance and danger to the community, including: (i) house arrest with RF monitoring; (ii) GPS monitoring; (iii) substantial restrictions on outside visitors; and (iv) significant restrictions on telephone use.  While these conditions would to some extent mitigate his risk of nonappearance and danger to the community, the Court does not believe that they do so to an acceptable level to reasonably assure his appearance and to reasonably assure that he will not be a danger to the community.  The Court has had difficulty in the past with defendants who are allegedly at the peak of a criminal organization becoming fugitives if the Court decides to release them, even when the defendants are on particularly restrictive conditions.  Even among defendants who face allegations that they were involved in large drug trafficking organizations, the potential scope of H. Varela's activities is greater than what the Court commonly sees among defendants.  He has the resources and significant incentive to flee the country.  Likewise, given the scope of his potential involvement in drug trafficking, there is a high likelihood that he will continue to engage in drug trafficking activity upon release -- even if the Court imposes highly restrictive conditions.  That high likelihood poses a significant danger to the community.  See Harmelin v. Michigan, 501 U.S. 957, 1002 (1991)(stating that the "possession, use, and distribution of illegal drugs represent one of the greatest problems affecting the health and welfare" of the United States).

There are also allegations that he was involved in gun trafficking activity, which raise the risk of a danger of death or serious bodily injury to the community.  The Court strives to impose

restrictive conditions on defendants when doing so is feasible in lieu of detaining defendants. The Court must remain conscious, however, that it sits in a border district that adjoins the United States-Mexican border. A defendant has a higher likelihood of escaping to a foreign country in this district than many other districts in the United States; people can cross the border before GPS and RF monitoring can do much good. The Court is particularly concerned that this case will not likely proceed to trial until 2013 based on the complexity of the case. That amount of time is a long time to be on pretrial release. Additionally, H. Varela has some family connections and allegedly many criminal connections in Mexico that could help facilitate flight to that country. Putting aside potential problems with B. Varela serving as his third-party custodian, there are significant risks that no third-party custodian could adequately monitor H. Varela if he decided to flee or decided to engage in more criminal activity. H. Varela has allegedly demonstrated ingenuity in organizing such a complex drug trafficking organization as well as swapping out telephones frequently to avoid detection. In the end, the risk of flight and danger to the community is too great to overcome. Consequently, the Court will order that H. Varela be detained pending trial.

IT IS ORDERED that: (i) the Defendant's Appeal from the Magistrate's Detention Order [Doc. 112], filed February 9, 2012 (Doc. 113), is denied; (ii) the Honorable Lorenzo F. Garcia, United States Magistrate Judge's Detention Order Pending Trial, filed February 9, 2012 (Doc. 112), is affirmed; and (iii) Defendant Homero Varela shall be detained pending trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Reeve L. Swainston
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Robert F. Gorence
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

      *Attorneys for the Defendant*