**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                      No. CR 12-0128 JB

HOMERO VARELA,

      Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Motion for Early Termination of Supervised Release, filed June 6, 2024 (Doc. 958)("Motion"). The Court held a hearing on September 27, 2024. <u>See</u> Clerk's Minutes for September 27, 2024, Hearing at 1, filed September 27, 2024 (Doc. 961); Draft Transcript of Hearing at 1, taken September 27, 2024("Tr.").[1] The primary issues are: (i) whether the Court has the power to terminate early Defendant Homero Varela's five-year term of supervised release, which is a mandatory minimum under 21 U.S.C. § 841(b)(1)(A), and 21 U.S.C. §841(b)(1)(B); and (ii) if the Court has the power to terminate early a mandatory minimum term of supervised release, whether the Court should do so here. Because the Court has the power to terminate early a term of supervised release after completing one year under 18 U.S.C. § 3583(e), and Varela meets § 3583(e)'s factors justifying the Court's exercise of that power, the Court grants early termination of supervised release.

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

## FACTUAL BACKGROUND

Varela's case involves a wiretap and confidential-informant investigation from May, 2011, to January, 2012, of Varela and others associated in the Varela's Drug Trafficking Organization ("Varela DTO") based in Albuquerque, New Mexico.  United States Probation Office's Presentence Investigation Report ¶ 17, at 7, disclosed March 2, 2013, filed October 3, 2024 (Doc. 962)("PSR").  The investigation reveals that Varela is an associate of the Sinaloa Drug Cartel in Mexico, and his main source of supply is a member of the Sinaloa Cartel known as "Jaime."  PSR ¶ 17, at 7.  Varela received drugs from his sources of supply and redistributed them in the Albuquerque area.  See PSR ¶ 17, at 7.  Agents identified fourteen members of the Varela DTO.  See PSR ¶ 17, at 7.  Agents also seized the following: 22.94 net kilograms of cocaine, 240.21 net kilograms of marijuana, 1.3122 net kilograms of methamphetamine, 19 firearms, and $112,270 in cash.  See PSR ¶ 18, at 7.  Finally, Varela and Varela DTO members engaged in money laundering for the organization.  See PSR ¶ 18, at 7.

Varela was arrested once in 2002 and twice in 2009 for battery against Blanca Villegas, who was his girlfriend at the time of the first arrest and eventually became his wife.  PSR ¶¶ 158-60, 47-48.  All of the charges were dismissed.  PSR ¶¶ 158-60, 47-48.

## PROCEDURAL BACKGROUND

On January 29, 2013, Varela pled guilty to: (i) Conspiracy to Distribute or Manufacture a Controlled Substance, in violation of 21 U.S.C. § 841(b)(1)(A) and 21 U.S.C. § 841(b)(1)(B); (ii) Conspiracy to Launder Money, in violation of 18 U.S.C. § 1956(h); and (iii) Money Laundering, in violation of 18 U.S.C. § 1957.  See Judgment in a Criminal Case at 1-2, filed August 29, 2013 (Doc. 508)("Judgment").  The PSR assigned Varela a criminal history category of I, reflecting no prior criminal convictions.  PSR ¶¶ 153-55, at 46.  The Court sentenced Varela to 135-months

imprisonment and 5-years supervised release.  See Judgment at 3-4.[2]  Varela's term of supervised release began on September 2, 2021, and will terminate on September 2, 2026.  See Motion at 1. He currently has completed over 36 months -- out of a total 60 months -- of supervised release. See Tr. at 10:11:13 (USPO Romero).

Varela filed a motion for early termination of his term of supervised release, noting that he has been fully compliant with the conditions of supervision.  See Motion at 1.  He argues that early termination is warranted because he poses no risk to public safety, has no history of violence, and has "demonstrated his rehabilitation and eagerness to move on with his life."  Motion at 3.  Finally, Varela asserts that he has met the requisite threshold of one year of supervised release, after which a district court can discretionarily terminate a term of supervised release early.  See Motion at 2-3; 18 U.S.C. § 3583(e).

The United States opposes the motion, contending that Varela's five-year term of supervised release is a mandatory minimum sentence for his offense: conspiracy to distribute controlled substances in violation of 21 U.S.C. § 841(b)(1)(A).  The United States further argues that even if the Court has the power to terminate a mandatory minimum term of supervised release, it should not do so here, because Varela has met the "minimal baseline" of complying with conditions of release, and because his criminal activity is serious.  See Response at 7-8.

At the Hearing, the United States Probation Office ("USPO") supports early termination of Varela's supervised release.  See Tr. at 21:13:16 (Court, USPO Escobedo).  The USPO notes that, under the Guide to Judicial Policy, Varela meets the criteria for early termination because he

---

[2]With a total offense level of 43 and a criminal history category of I, the PSR noted that the guideline imprisonment range is life.  See PSR ¶ 202, at 59.  However, because Varela entered into a plea agreement pursuant to Federal R. Crim. P. Rule 11(c)(1)(C), the parties stipulated to a sentence between 120 and 135 months.  See PSR ¶¶ 202, 206 at 59.

"does not present a risk to the public," has no court-reported violations for the past twelve months, and "demonstrates the ability to self-manage beyond a period of supervision." Tr. at 21:3-12 (USPO Escobedo). Varela's counsel requests that, were the Court to deny Varela's motion, the Court should consider alternative modifications to his supervised release so he can travel for work related to his family's horse-breeding business. Tr. at 11:16-18 (Varela); id. at 15:17-21 (Ray).

## LAW REGARDING EARLY TERMINATION OF SUPERVISED RELEASE

The United States Court of Appeals for the Eleventh Circuit states:

> The primary goal of supervised release is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period of time in prison for punishment or other purposes but still needs supervision and training programs after release.

United States v. Pugh, 515 F.3d 1179, 1199 (11th Cir. 2008)(quoting United States v. Armendariz, 451 F.3d 352, 362 n.6 (5th Cir. 2006)(citing S. Rep. No. 98-225, at 124 (1984), reprinted in 1984 U.S.C.C.A.N. 3182)). "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." United States v. Johnson, 529 U.S. 53, 59 (2000)(citing S.Rep. No. 98-225, at 124). Congress prohibits incarcerating an offender for rehabilitation purposes, but a court may consider an offender's need for rehabilitation in prescribing supervised-release conditions. See United States v. Burgos, 276 F.3d 1284, 1290 n.6 (11th Cir. 2001); United States v. Vigil, No. CR 05-2051 JB, 2010 WL 2301708, at *9 (D.N.M. May 4, 2010)(Browning, J.).

The sentencing court, pursuant to 18 U.S.C. § 3583(e)(1), which specifically refers the court to consider the factors in 18 U.S.C. § 3553(a), may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e). "Whether to grant a motion to terminate a term

of supervised release under § 3583(e)(1) is a matter of district court discretion." Rhodes v. Judiscak, 676 F.3d 931, 933 (10th Cir. 2011)(citing United States v. Lowe, 632 F.3d 996, 998 (7th Cir. 2011)). "Abuse of discretion occurs when the district court commits a serious error of judgment, such as the failure to consider an essential factor." United States v. Lowe, 632 F.3d at 997.

In accord with 18 U.S.C. § 3583(e), the district court must consider the factors that 18 U.S.C. § 3553(a) sets forth before terminating a term of supervised release. See 18 U.S.C. § 3583(e). The first factor that the Court examines is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The second factor is "the need for the sentence imposed." 18 U.S.C. § 3553(a)(2). In analyzing the second factor, the district court considers what sentence adequately reflects the offense's seriousness, promotes respect for the law, provides just punishment for the offense, adequately deters criminal conduct, protects the public, and provides the defendant with educational or vocational training, medical care, or other correctional treatment. See 18 U.S.C. § 3553(a)(2)(A)-(D). After considering the factors that 18 U.S.C. § 3553(a) sets forth, the district court examines whether the defendant's conduct warrants early termination and whether the early termination of supervised release is in the interest of justice. See 18 U.S.C. § 3583(e)(1). Finally, the district court exercises its discretion in granting or denying a defendant's motion for early termination of supervised release. See 18 U.S.C. § 3583(e).

The Guide to Judiciary Policy[3] provides criteria that a court should consider before ending supervision early. See Administrative Office of the United States Courts, Guide to Judiciary

_____

[3]The Administrative Office of the United States Courts ("AO"), under the Judicial Conference's direction, publishes the Guide to Judiciary Policy, which is "the official repository of the federal judiciary's administrative policies." AO, Guide to Judiciary Policy (last visited Dec.

Policy, Vol. 8, Part E, § 360.20.  Courts should consider two criteria for early termination for a person within the first 18 months of supervised release, and six criteria for a person who has completed 18 months, for whom there is a presumption in favor of early termination:

> (b)      During the first 18 months of supervision, the appropriateness of early termination must be based on the person's overall progress in meeting supervision objectives, to include having:
>
> > (1)      substantially satisfied the requirements of the court order; and
> >
> > (2)      demonstrated a willingness and capability to remain lawful beyond the period of supervision.
>
> **Note:** Officers should not recommend persons for early termination who have an identified higher risk to community safety.
>
> (c)      At 18 months, there is a presumption in favor of recommending early termination for persons who meet the following criteria:
>
> > (1)      The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. § 994(h)) or has not committed a sex offense or engaged in terrorism;
> >
> > (2)      The person presents no identified risk of harm to the public or victims;
> >
> > (3)      The person is free from any court-reported violations over a 12-month period;
> >
> > (4)      The person demonstrates the ability to lawfully self-manage beyond the period of supervision;
> >
> > (5)      The person is in substantial compliance with all conditions of supervision; and

---

3, 2021), available at https://jnet.ao.dcn/policy-guidance/guide-judiciary-policy.  Volume Eight of the Guide to Judiciary Policy provides procedures and policies regarding Probation and Pretrial Services.  See AO, Guide to Judiciary Policy, Vol. 8 (last revised Dec. 13, 2019), available at https://jnet.ao.dcn/policy-guidance/guide-judiciary-policy.  Part E -- covering Post-Conviction Supervision -- includes criteria a court should consider before ending supervision early.  See AO, Guide to Judiciary Policy, Vol. 8, Part E, § 360.20.

(6)    The person engages in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

AO, Guide to Judiciary Policy, Vol. 8, Part E, § 360.20 (bold in original).

## LAW REGARDING EARLY TERMINATION OF A MANDATORY MINIMUM TERM OF SUPERVISED RELEASE

Few United States Courts of Appeals have ruled whether a district court has the power to terminate early a mandatory minimum term of supervised release, and the Tenth Circuit has not decided the issue. Most notably, the Sixth Circuit holds that a district court has the power to terminate a mandatory minimum term of supervised release. See United States v. Spinelle, 41 F.3d 1056, 1060 (6th Cir. 1994)("Spinelle"). In Spinelle, Spinelle seeks release early from serving the remainder of his three-year mandatory term of supervised release. Spinelle, 41 F.3d at 1057. The district court sentenced Spinelle to eighteen years in prison, for manufacturing marijuana in violation of the Anti-Drug Abuse Act of 1986, see 21 U.S.C. § 841, and a three-year mandatory term of supervised release under the Anti-Drug Abuse Act of 1986's supervised release sentencing requirements. See 21 U.S.C. § 841(b)(1)(C). See Spinelle, 41 F.3d at 1057. The district court, impressed with Spinelle's rehabilitation efforts, terminates his supervised release after he completes one year, pursuant to its discretionary authority under 18 U.S.C. § 3583(e). See Spinelle, 41 F.3d at 1057. The United States challenges the district court's early release, arguing that the district court has no discretionary authority under 18 U.S.C. § 3583(e)(1) to terminate a mandatory term of supervised release. See Spinelle, 41 F.3d at 1057. The Sixth Circuit disagrees with the United States, and upholds the district court's discretionary authority to terminate a term of supervised release after one year, under 18 U.S.C. § 3583(e)(1), despite Spinelle's three-year mandatory minimum term of supervised release, imposed under 21 U.S.C. § 841(b)(1)(C). See Spinelle, 41 F.3d at 1060-61. The Sixth Circuit looks to the statutory history and statutory

- 7 -

interpretation of the Anti-Drug Abuse Act of 1986's supervised-release sentencing requirements, 21 U.S.C. § 841(b)(1)(C).  First, when Congress enacted 21 U.S.C. § 841(b)(1)(C), it also amended 18 U.S.C. § 3583(a), which governs the imposition of supervised release, to require the court "include as part of the sentence a requirement that the defendant be placed on a term of supervised release if such a term is required by statute."  See Spinelle, 41 F.3d at 1058.  Congress did not amend, however, 18 U.S.C. § 3583(e), which gives district courts the discretionary authority to terminate supervised release after the completion of one year of supervised release.  See Spinelle, 41 F.3d at 1058.  Second, the statutory interpretation of 21 U.S.C. § 841(b)(1)(C), which sets the mandatory minimum term of supervised release, and 18 U.S.C. § 3583(e), which gives the court discretion to terminate the term of supervised release, "does not create an irreconcilable conflict," because they are "seen as two separate chronological phases."  Spinelle, 41 F.3d at 1059-60.

The two separate chronological phases, according to the Sixth Circuit, are: (i) sentencing; and (ii) post-sentence modification.  See Spinelle, 41 F.3d at 1059.  It further explains:

> When Congress subsequently amended 18 U.S.C. § 3583(a) to require that courts impose a term of supervised release on a defendant if such a term is required by statute, it only partially limited a court's discretionary authority to impose the sentence. Congress did not alter the court's separate authority to terminate a sentence of supervised release, under 18 U.S.C. § 3583(e)(1), if the conduct of the person and the interest of justice warranted it.

Spinelle, 41 F.3d at 1059 (emphasis in original).  Thus, "[t]he statute mandating a specific sentence of supervised release and the statute authorizing the termination of a prior imposed sentence are quite consistent."  Spinelle, 41 F.3d at 1060.  The Seventh Circuit similarly notes the distinction between the statutory requirements that "impose" a sentence and those that "control how it may modify" one.  Pope v. Perdue, 889 F.3d 410, 414 (7th Cir. 2018).  In Pope v. Perdue, the district court imposes a mandatory minimum term of supervised release for the defendant's violation of state and federal pandering laws.  See Pope v. Perdue, 889 F.3d at 412-13.  The Seventh Circuit

concludes, however, that § 3583(e) "also independently authorizes" the court to terminate a term of supervised release if the defendant's conduct and the interests of justice warrant early termination.  Pope v. Perdue, 889 F.3d at 414.  The Seventh Circuit explains: "No language from either sub-section suggests that Congress intended a minimum term of supervised release 'in imposing a sentence' to constrain the court's ability to later terminate it." (citing United States v. Spinelle, 41 F.3d 1056, 1060 (6th Cir. 1994)).  Many district courts follow Spinelle's reasoning that a court's statutory imposition of mandatory minimum term of supervised release accords with a court's statutory authority to terminate early supervised release after completing one year.  See, e.g., United States v. Stacklin, 2009 WL 2486336, at *1 (E.D. Mo. Aug. 11, 2009)(Shaw, J.)(exercising discretion to terminate a five-year mandatory minimum term of supervised release); United States v. Scott, 362 F.Supp.2d 982, 983-84 (N.D. Ill. 2005)(Gettleman, J.)(allowing early termination of defendant's ten-year mandatory minimum term of supervised release);  United States v. Gainer, 936 F. Supp. 785 (D. Kansas 1996)(Saffels, J.); United States v. McClister, No. 2:02-CR-87, 2008 WL 153771, at *1-2 (D. Utah Jan 14, 2008)(Stewart, J.).

The D.C. Circuit arguably arrives at the opposite conclusion in United States v. Lafeyette, 585 F.3d 435, 440 (D.C. Cir. 2009).  See United States v. Hernandez-Flores, No. CR 02-1020-JB, 2012 WL 119609 at *5 (D.N.M. Jan. 2012)(Browning, J.)("Hernandez-Flores").  United States v. Lafeyette, however, concerns a defendant's request for termination of supervised release under 18

U.S.C. § 3582(c)(2),[4] which gives courts discretionary authority to [5]reduce terms of imprisonment under certain circumstances. The D.C. Circuit expresses skepticism that 18 U.S.C. 3582(c)(2), "which on its face only allows courts to reduce a 'term of imprisonment,' can be stretched to cover other aspects of a sentence," such as supervised release. United States v. Lafeyette, 585 F.3d at 440 (internal quotations have no citation). The D.C. Circuit ultimately upholds denying any reduction, because the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 841(b)(1)(A), mandates Lafeyette's five-year term of supervised release. United States v. Lafeyette, 585 F.3d at 440. The panel does not address, however, whether a court's discretionary authority to terminate a term of supervised release under 18 U.S.C § 3583(e) conflicts with a mandatory minimum term of supervised release pursuant to a federal criminal statute. No court cites to United States v. Lafeyette to require a defendant carry out a mandatory minimum term of supervised release over a court's discretionary authority to terminate early supervised release

---

[4]18 U.S.C. § 3582(c)(2) provides:

     The court may not modify a term of imprisonment once it has been imposed except that --

. . .

in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

under 18 U.S.C. § 3583(e)(1).[6]  Furthermore, in a subsequent unpublished opinion, the D.C. Circuit assumes without deciding that a district court "could" reduce a mandatory term of supervised release under 18 U.S.C. § 3583(e).  United States v. Bundy, 391 F.App'x 886, 886-87 (D.C. Cir. 2010)(unpublished)(per curiam)("Even assuming his mandatory term of supervised release could be reduced, [. . .]").  The D.C. Circuit then concludes that the defendant is not eligible for relief under § 3583(e), because he has not completed one year of supervised release.  See United States v. Bundy, 391 F.App'x at 887.  The Sixth Circuit's conclusion, therefore, that a court has discretionary authority under 18 U.S.C. § 3583(e) to terminate a mandatory minimum term of supervised release is the only determination on this issue.

Two judges in the District of New Mexico follow Spinelle.  In United States v. Jones, No. CR16-02914-MV 2024 WL 82844 (D.N.M. Jan. 5, 2024)(Vazquez, J.), the Honorable Martha Vazquez, Senior United States District Judge for the United States District Court of the District of New Mexico, adopts Spinelle's reasoning to conclude that, while § 841(b)(1)(B) requires the court to impose a four-year minimum term of supervised release, the court "fulfilled its statutory obligation" by sentencing the defendant to the mandatory minimum, but "retains authority under § 3583(e)" to terminate early the four-year term.  United States v. Jones, 2024 WL 82844 at *6. See United States v. Hovey, No. CR11-2672-WJ 2024 WL 3873749 at *2-3 (D.N.M. Aug. 20, 2024)(Johnson, C.J.)(following the Sixth Circuit's reasoning in Spinelle).  In Hernandez-Flores, the Court does not decide that it has the power to terminate early a mandatory term of supervised release, but ultimately denies the defendant's motion by weighing the factors for early termination under 18 U.S.C. § 3583(e)(1).  See 2012 WL 119609 at *5.  In Hernandez-Flores, the Court

---

[6]Neither has any court extrapolated from United States v. Lafayette that 18 U.S.C. § 3582(c)(2), which allows imprisonment term reductions, can "stretch" to supervised release early terminations.  585 F.3d 435, 440 (D.C. Cir. 2009).

explains that the statutory minimum "reflects a congressional judgment that defendants who commit certain drug offenses should serve at least a certain term of supervised release" and notes that these mandatory minimums are "relatively rare among criminal offenses."  2012 WL 119609 at *3.  Finally, the Court nods to the importance of mandatory minimum terms of supervised release: "The mandatory minimum terms of supervised release Congress assigned for violations of these offenses help promote respect for the law and afford adequate deterrence.  They also ensure that defendants are less likely to relapse into criminal behavior or become victims to a drug problem."  See 2012 WL 119609 at *5.

## LAW REGARDING COMPASSIONATE RELEASE

Federal courts are generally forbidden from modifying a term of imprisonment after it has been imposed.  See Freeman v. United States, 564 U.S. 522, 526 (2011).  Nevertheless, this "rule of finality is subject to a few narrow exceptions," including when a defendant moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).  United States v. Maumau, 993 F.3d 821, 830 (10th Cir. 2021)("Maumau").  Section 3582(c)(1)(A), commonly known as the compassionate-release statute, allows a defendant to move the court for early release from prison provided certain conditions are met.[7]  First, § 3582(c)(1)(A) "requires exhaustion before a court may consider a motion for compassionate release."  United States v. Hemmelgarn, 15 F.4th 1027, 1030 (10th Cir. 2021).  A defendant satisfies this exhaustion requirement if: (i) "the defendant has fully exhausted

---

[7]Before the passage of the First Step Act of 2018, Pub. L. No. 115-39132 Stat 5194 (December 21, 2018)("First Step Act"), 18 U.S.C. § 3582 permitted only the Bureau of Prisons Director to ask the court for a defendant's compassionate release.  E.g., United States v. Smartt, 129 F.3d 539, 541 (10th Cir. 1997)(explaining that a prisoner was not eligible for compassionate release absent motion from Bureau of Prisons Director).  The First Step Act, however, amended § 3582 to enable defendants to petition the court for compassionate release after exhausting administrative remedies.  See United States v. Maumau, 993 F.3d 821, 830 (10th Cir. 2021)("Maumau")(discussing the First Step Act's changes to § 3582).

all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf"; or (ii) thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).[8]

If a defendant satisfies the exhaustion requirement, district courts follow a three-part test to evaluate a defendant's compassionate release motion.  See United States v. McGee, 992 F.3d 1035, 1042-43 (10th Cir. 2021)("McGee")(citing United States v. Jones, 980 F.3d 1098, 1107 (6th Cir. 2020)); United States v. Haworth, No. CR 95-0491, 2023 WL 8112827, at *10-16 (D.N.M. November 22, 2023)(Browning, J.)(assessing a compassionate release motion under McGee's three-part test).  First, the court must determine whether extraordinary and compelling reasons warrant a sentence reduction.  See McGee, 992 F.3d at 1042; 18 U.S.C. § 3582(c)(1)(A)(i). Second, the court must determine whether such a reduction is consistent with applicable policy statements that the Sentencing Commission has issued.  See McGee, 992 F.3d at 1042.  Third, the court must consider whether a reduction aligns with the applicable 18 U.S.C. § 3553(a) factors.

---

[8]In the United States Court of Appeals for the Tenth Circuit, this exhaustion requirement is a mandatory claim-processing rule, meaning the requirement is not "jurisdictional," and "challenges based on the failure to exhaust 'can be waived or forfeited.'"  United States v. Hemmelgarn, 15 F.4th 1027, 1030-31 (10th Cir. 2021)("[M]andatory claim-processing rules do not implicate the courts' adjudicatory authority . . . .").  See United States v. Nash, No. 19-40022, 2022 WL 2072733, at *1 (D. Kan. June 9, 2022)(Crabtree, J.)("[T]his exhaustion requirement is a claim-processing rule that the government may waive or forfeit.").  For example, in United States v. Hemmelgarn, the Tenth Circuit considered the defendant's motion for compassionate release, even though the defendant "failed to provide proof that he exhausted his administrative remedies," because "the government did not argue exhaustion on appeal."  15 F.4th at 1031.  Before United States v. Hemmelgarn, the Tenth Circuit suggested that the exhaustion requirement is jurisdictional and, therefore, not subject to waiver.  See, e.g., United States v. Johnson, 849 F. App'x 750, 753 (10th Cir. 2021)("In this circuit, however, § 3582(c)(1)(A)'s exhaustion requirement is mandatory, rather than judicially waivable."); United States v. Gonzales, 547 F. Supp. 3d 1083, 1109 (D.N.M. 2021)(Browning J.)("[T]he Tenth Circuit has continued to impose the exhaustion requirement as mandatory and not judicially waivable despite the COVID-19 pandemic."), aff'd, No. 21-2060, 2021 WL 5985347 (10th Cir. Dec. 17, 2021); United States v. Heath, No. CR-13-102, 2020 WL 1957916, at *2 (W.D. Okla. April 23, 2020)(Palk, J.)(collecting cases).

See McGee, 992 F.3d at 1042.  Defendants must satisfy all three requirements, and, accordingly, district courts may deny a compassionate release motion on any of the three steps without addressing the others.  See United States v. Hald, 8 F.4th 932, 942-43 (10th Cir. 2021)("If the most convenient way for the district court to dispose of a motion for compassionate release is to reject it for failure to satisfy one of the steps, we see no benefit in requiring it to make the useless gesture of determining whether one of the other steps is satisfied."), cert. denied, 142 S. Ct. 2742 (2022); McGee, 992 F.3d at 1042.  Conversely, courts must address all three steps when granting a motion for compassionate release.  See Maumau, 993 F.3d at 831 n.4.   See United States v. Thompson, No. CR 12-3013 JB/CG, 2024 WL 1557126 at *16 (D.N.M. April 10, 2024)(Browning, J.)(denying the defendant's motion for compassionate release because: (i) the defendant's medical conditions are not "extraordinary and compelling" reasons to reduce his sentence; (ii) the sentence reduction is inconsistent with applicable policy statements; and (iii) the reduction does not align with the 18 U.S.C. § 3553(a) factors given the seriousness of his offense and his extensive criminal history); United States v. Burke, No. CR 21-0655 JB, 2024 WL 3829969 at *20 (D.N.M. Aug. 15, 2024)(Browning, J.)(denying the defendant's motion for compassionate release because even though defendant's medical conditions are "extraordinary and compelling reasons" to reduce his sentence and the requested sentence reduction is consistent with the U.S.S.G. § 1B1.13 policy statement, the sentence does not meet the factors in 18 U.S.C. § 3553(a) because of the seriousness of the offense and criminal history).

1.    **Extraordinary and Compelling Reasons.**

At the first step of the three-part compassionate release test, courts must determine whether "extraordinary and compelling reasons warrant" a sentence reduction.    18 U.S.C. § 3582(c)(1)(A)(i).  See McGee, 992 F.3d at 1042.  District courts "have the authority to determine

for themselves what constitutes extraordinary and compelling reasons." United States v. Hald, 8 F.4th at 938 n.4.  See McGee, 992 F.3d at 1044 ("Congress intended to afford district courts with discretion, in carrying out the first step of the statutory test in § 3582(c)(1)(A)(i), to independently determine the existence of extraordinary and compelling reasons . . . .").  This discretion, however, "is bounded by the requirement under step two of the statutory test that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission." Maumau, 993 F.3d at 832.  The Court has "deriv[ed] its test for extraordinary and compelling circumstances from the words' dictionary definitions." United States v. Gonzales, 547 F. Supp. 3d 1083, 1124-25 (D.N.M. 2021)(Browning, J.), aff'd, No. 21-2060, 2021 WL 5985347 (10th Cir. December 17, 2021).  Black's Law Dictionary defines extraordinary as "[b]eyond what is usual, customary, regular, or common," Extraordinary, Black's Law Dictionary (11th ed. 2019), and the New Oxford American Dictionary defines compelling as "evoking interest, attention, or admiration in a powerfully irresistible way; not able to be refuted, inspiring conviction; not able to be resisted, overwhelming," Compelling, New Oxford American Dictionary (3d ed. 2010).  See United States v. Haworth, 2023 WL 8112827, at *11 ("Haworth has not demonstrated that the risks posed by COVID-19 extend '[b]eyond what is usual, customary, regular, or common . . . .'" (quoting Extraordinary, Black's Law Dictionary (11th ed. 2019)).  Accord United States v. Castano-Vasquez, 266 F.3d 228, 233 (3d Cir. 2001).

Courts commonly consider whether a defendant's medical condition constitutes extraordinary and compelling reasons.  In determining whether medical issues warrant a defendant's release, courts evaluate: (i) the severity of the defendant's medical conditions, including whether a condition is terminal, see United States v. Bauer, 554 F. Supp. 3d 1109, 1112-13 (D.N.M. 2021)(Johnson, C.J.)(concluding that the defendant's numerous, serious, and

irreparable debilitations demonstrated extraordinary and compelling reasons to reduce his sentence, even though the defendant had an extensive criminal history); United States v. Lopez, 487 F. Supp. 3d 1156, 1158 (D.N.M. 2020)(Vázquez, J.)(recognizing that "where the defendant is suffering from a terminal illness," compassionate release may be warranted); but see United States v. Chambliss, 948 F.3d 691, 693-94 (5th Cir. 2020)(denying a request for compassionate release where the defendant had a terminal disease, because the defendant had committed a serious drug crime and previously had committed aggravated robbery); (ii) the defendant's age, because older inmates are more likely to have serious diseases, are more likely to have served a significant portion of his or her sentence, and are less likely to be a danger to society if released, see United States v. Johns, No. CR 91-392, 2019 WL 2646663, at *3 (D. Ariz. June 27, 2019)(Jorgenson, J.)(granting release to an eighty-one-year-old defendant who served almost twenty-three years of his sentence, could no longer go to the cafeteria to eat, had a fading memory, and was the oldest inmate at the facility); but see United States v. Slater, 547 F. Supp. 3d 58, 87 (D. Me. 2021)(Woodcock, J.)(denying compassionate release despite that the defendant was elderly and suffered from numerous health conditions, because the defendant was not entirely incapacitated and still could cause serious harm with a gun); and (iii) whether the defendant is receiving adequate care while incarcerated, see United States v. Beck, 425 F. Supp. 3d 573, 581 (M.D. N.C. 2019)(Eagles, J.)(granting a motion for compassionate release in part, because of the Bureau of Prisons' "abysmal health care"); United States v. Eccleston, 543 F. Supp. 3d 1092, 1140 (D.N.M. 2021)(Browning, J.)("S. Eccleston's medical difficulties do not present extraordinary and compelling circumstances, because the record indicates that the [Bureau of Prisons] manages

effectively his chronic conditions . . . .").[9]

---

[9]Generally speaking, it is very difficult for the Court to decide: (i) whether the Bureau of Prisons' medical care has been poor; and (ii) whether that poor care has compromised the defendant's prospects of survival in a compassionate release case.  Normally, poor medical care in prison is addressed in civil cases and not in criminal cases.  See Ramos v. Martinez, No. CIV 17-0120, 2019 WL 7049620, at *3 (D.N.M. Dec. 23, 2019)(Browning, J.)("Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain that the Eighth Amendment proscribes.").  Typically, the courts do not deal with medical care in the criminal context, but wait for a Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)("Bivens") action under the Eighth Amendment.  See, e.g., Carlson v. Greene, 446 U.S. 14, 20 (1980); Estelle v. Gamble, 429 U.S. 97, 104 (1976); Richardson v. Daniels, 557 F. App'x 725, 728 (10th Cir. 2014)(affirming dismissal of a prisoner's Bivens claim which alleged that the defendants "violated his Eighth Amendment rights in connection with their response to a seizure he had," where "corrections officers responded to his seizure, he received prompt medical attention and has been given medicine to treat seizures").  Cf. Moya v. San Juan Cnty. Adult Det. Ctr., No. CIV 20-0431, 2022 WL 16924001, at *3-5 (D.N.M. November 14, 2022)(Browning, J.)(recognizing that § 1983 is the proper avenue for pre-trial detainees to vindicate their medical claims).

The efficient solution to poor medical care in a prison setting is neither to redo a sentence nor to release the defendant.  It seems strange that federal courts do not deal with medical protection in criminal cases unless detention center circumstances jeopardize the defendant's right to effective assistance of counsel, see United States v. Folse, Nos. CR 15-2485 JB, CR 15-3883 JB, 2016 WL 3996386 at *16-17 (D.N.M. June 15, 2016)(Browning, J.)(noting that the "primary exception" to the requirement that a prisoner must challenge conditions of confinement through a civil action is when a condition of confinement interferes with a pretrial detainee's access to counsel in a criminal case) but, once a defendant goes to prison, courts may use poor medical care to release a defendant, see, e.g., United States v. Beck, 425 F. Supp. 3d 573, 586 (M.D.N.C. 2019)(Eagles, J.)(granting a prisoner's compassionate release motion "given her breast cancer and the poor treatment she has received at [Bureau of Prisons]").  Instead, Bivens actions are a more suitable remedy for problems with prison medical care than are compassionate release motions.  Unless the parties are willing to present the court with a robust evidentiary record, the Court is left with the uneasy feeling that it is dealing with a pro se prisoner's complaint that is often seen in Bivens actions -- skeptical that the situation is as bad as the pro se prisoner says it is.

Moreover, it is difficult for a district court to compare medical care.  Often, a defendant, when released, has no medical insurance, and his or her care is problematic.  It is not clear how the court should compare the care in a medical Bureau of Prisons Facility with care on the outside, particularly where the court must speculate regarding the quality of medical a defendant might receive once released.  Further, it is very difficult for a district court to know, without the discovery and experts that it has in a civil case, whether the defendant is the problem or whether the facility is the problem.  See Nicholson v. Evangelical Lutheran Good Samaritan Soc'y, Inc., No. CIV 16-0164, 2017 WL 3127799, at *29 (D.N.M. July 21, 2017)(Browning, J.)(stating that, in a medical malpractice case, the plaintiff must "use expert medical testimony," because, where "'the cause and effect of a physical condition lies in a field of knowledge in which only a medical expert can give a competent opinion,' a plaintiff must introduce expert medical testimony that establishes

Since COVID-19's emergence, the Court has considered whether the risks that the virus poses constitute extraordinary and compelling reasons.  First, general concerns about potential exposure to COVID-19 alone do not demonstrate an extraordinary and compelling reason for a reduced sentence.  See United States v. Wood, No. CR 14-2446, 2020 WL 4016058, at *2 (D.N.M. July 16, 2020)(Browning, J.)("'[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.'" (quoting United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020))).  Rather, a defendant must demonstrate that his or her medical conditions make acquiring COVID-19 more likely or increase the risk that the defendant will experience a severe case of COVID-19 upon contraction of the virus.  See United States v. Hemmelgarn, 15 F.4th at 1031 ("The district court's finding that these medical conditions identified by Hemmelgarn do not place him at a risk of severe illness from COVID-19 is not clearly erroneous."); United States v. Baca, No. CR 16-1613, 2020 WL 5369078, at *15 (D.N.M. September 8, 2020)(Browning, J.)("[C]ases in which COVID-19 is a factor for compassionate release require more than speculative complications.").

In determining whether the risk of severe COVID-19 from a medical condition constitutes an extraordinary and compelling reason, the United States has, in some cases, "concede[s] that

---

causation")(quoting Woods v. Brumlop, 1962-NMSC-133, ¶ 15, 71 N.M. 221, 225, 377 P.2d 520, 523, and citing O'Banion v. Owens Corning Fiberglass Corp., 968 F.2d 1011, 1013 (10th Cir. 1992)(affirming an order that excluded evidence of cancer where plaintiff presented no evidence "from a qualified medical expert stating that there is a reasonable medical probability the Plaintiff will have a cancer condition from his asbestos related disease")).

Accordingly, courts should proceed with caution when they encounter the thin medical record that often exists in criminal cases.  Moreover, presenting courts with voluminous medical records is not very helpful where the litigation lacks expert testimony and a true adversarial process, as is often the case in compassionate release motions.  On this basis, the court cannot evaluate meaningfully whether the defendant properly has requested medical assistance, whether the facility improperly has denied the requested care, and how severe the defendant's health condition is.  See United States v. Gonzales, 547 F. Supp. 3d at 1118.

having a CDC-identified COVID-19 risk factor satisfies the extraordinary and compelling prong of § 3582(c)(1)(A)(i)." United States v. Loughry, No. CR 08-0132, 2020 WL 7319077, at *3 (S.D. Ind. Dec. 10, 2020)(Barker, J.)(listing cases). See United States v. Gonzales, 547 F. Supp. 3d at 1100 ("The United States . . . admits that Gonzales' case satisfies the extraordinary and compelling circumstances requirement, [because] Gonzales' asthma and severe obesity 'are clearly identified as risk factors by the CDC.'" (quoting the record)). The Court has concluded, however, that the defendant's suffering from a medical condition that the CDC has identified as a COVID-19 risk factor (a "listed condition") does not compel the conclusion that the defendant has demonstrated extraordinary and compelling circumstances. See United States v. Gonzales, 547 F. Supp. 3d at 1100 (disagreeing with the United States' "blanket concession" that, "where an individual is incarcerated and has a condition that the CDC asserts creates a heightened risk of COVID-19 complications . . . , that person presents extraordinary and compelling circumstances," and concluding that "the Court must[] evaluate each case on an individualized basis"). The Tenth Circuit agrees that, while district courts may rely on CDC guidance in determining whether extraordinary and compelling reasons exist, they are not bound to conclude that such conditions exist by the mere fact that an inmate's medical condition is a listed condition:

> Mr. Mendoza-Contreras appears to contend that district courts lack discretion to deny compassionate release to any inmate who has an underlying medical condition that increases his risk of severe illness from COVID-19. We reject that proposition as inconsistent with the district court's broad discretion to determine what constitutes extraordinary and compelling reasons under § 3582(c)(1)(A)(i).

United States v. Mendoza-Contreras, No. 22-5057, 2023 WL 2706808, at *3 (10th Cir. March 30, 2023). In addition, "access to vaccination . . . weigh[s] against a finding of extraordinary and compelling reasons," United States v. Hald, 8 F.4th 932 at 939 n.5; see United States v. Jefferson, No. 22-8067, 2023 WL 5572550,  at *2 (10th Cir. August 29, 2023)(collecting cases), and

numerous courts have held "that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances," United States v. Baeza-Vargas, 2021 WL 1250349, at *2-3 (D. Ariz. April 5, 2021)(Teilborg, J.).

In addition to a defendant's medical concern, courts have cited a change in sentencing, such that the defendant would be given a significantly lower sentence now compared to the original sentence, as an extraordinary and compelling circumstance.  See Maumau, 993 F.3d at 837 (agreeing with the district court that the length of the defendant's sentence, and the fact that the defendant would not receive the same sentence if the crime occurred today, supports a finding of extraordinary and compelling reasons); United States v. Eccleston, 543 F. Supp. 3d at 1144-45 (identifying the defendant's "reasonable, but incorrect, belief when he signed his State and federal Plea Agreements that his state and federal sentences would run concurrently" as one factor among many that "persuades the Court to find extraordinary and compelling circumstances").  Courts nevertheless must be cautious when considering circumstances surrounding a defendant's sentence as part of the extraordinary and compelling analysis to accord due respect to Congress' province to fix criminal penalties:

> The length of the sentence cannot be an extraordinary and compelling reason to grant compassionate release because this would infringe on the legislature's province to fix penalties.  This is especially true when mandatory minimums are involved.  In essence, Andrews asks the Court to reevaluate his sentence and fashion its own brand of justice.  But to do so in this manner would intrude on legislative prerogatives.

United States v. Andrews, 480 F. Supp. 3d 669, 678-79 (E.D. Pa. 2020)(Robreno, J.), aff'd, 12 F.4th 255 (3d Cir. 2021).  The Court has concluded, for example, that "prospective statutory changes generally do not result in extraordinary and compelling circumstances warranting compassionate release." United States v. Eccleston, 543 F. Supp. 3d at 1141-42 (citing Van Skiver v. United States, 952 F.2d 1241, 1245 (10th Cir. 1991)).  Furthermore, some courts have held that

care needs for the defendant's family members also may support the defendant's request for compassionate release. See United States v. Washburn, No. 10-2456, 2023 WL 3853343, at *4 (D.N.M. June 6, 2023)(Urias, J.)("Defendant has established that the circumstances involving his mother's caregiving contributes to a finding of extraordinary and compelling reasons that warrant his compassionate release because he is the only available caregiver for her."); Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28257 (May 3, 2023)("[A] parent has been the family member most often identified as needing care by courts granting sentence reductions."). But see United States v. Haworth, 2023 WL 8112827, at *10 ("Haworth has not demonstrated that his mother's medical condition is sufficiently serious to warrant his release to assist in her care."). Finally, Congress has expressed that "'[r]ehabilitation of the defendant alone . . . shall not be considered an extraordinary and compelling reason.'" McGee, 992 F.3d at 1044 (quoting 28 U.S.C. § 994(t)).

### 2.      The U.S.S.G. § 1B1.13 Policy Statement and the 2023 Amendments.

At the second step of the three-part test for considering motions for compassionate release, courts consider whether a "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). See McGee, 992 F.3d at 1042. Congress has directed the Sentencing Commission to promulgate "general policy statements" regarding the appropriate use of the sentence modification provisions set forth in § 3582(c). 28 U.S.C. § 994(a)(2)(C). Congress has called upon the Sentencing Commission, in promulgating these general policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Applicable policy statements do not define "exclusively" what courts may consider extraordinary and compelling reasons for a sentence reduction; rather, policy statements

"describe those characteristic or significant qualities or features that typically constitute 'extraordinary and compelling reasons.'" McGee, 992 F.3d at 1045 (quoting § 3582(c)(1)(A)).  In short, "Congress intended for the Sentencing Commission's policy statements to serve as guideposts for district courts under the second part of the statutory test." McGee, 992 F.3d at 1048.

On November 1, 2023, the Sentencing Commission issued an applicable policy statement that amends U.S.S.G. §1B1.13, expanding what are "extraordinary and compelling reasons" for compassionate release and permitting defendants to file motions for compassionate release.  See U.S.S.G. §1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)(Policy Statement).  Before this amended § 1B1.13 policy statement, the Tenth Circuit had held that there were no current applicable policy statements from the Sentencing Commission, because the then existing policy statement was "applicable only to motions filed by the Director of the [Bureau of Prisons], and not to motions filed directly by defendants." Maumau, 993 F.3d at 837.  At the time, § 1B1.13 referred only to motions that the Bureau of Prisons director filed, because § 1B1.13 was issued shortly before the passage of the First Step Act of 2018, Pub. L. No. 115-39132 Stat 5194 (December 21, 2018)("First Step Act"), which, for the first time, provides defendants with the ability to bring motions for compassionate release.  U.S.S.G. § 1B1.13(a) (2018)(amended 2023). The Tenth Circuit reasoned that, because § 1B1.13 did not recognize that defendants could bring compassionate release motions, the policy statement was not applicable to motions brought by defendants.  See McGee, 992 F.3d at 1050 ("[T]he Sentencing Commission's most recent policy statement, which was issued prior to the First Step Act, is not applicable."); United States v. Carr, 851 F. App'x 848, 853 (10th Cir. 2021)(reversing a district court where the district court relied on the policy statement, because, "[a]lthough it was within the district court's discretion to conclude the application notes to U.S.S.G. § 1B1.13 still provided the best definition and description of

extraordinary and compelling reasons under the circumstances," it was "not apparent the district court recognized U.S.S.G. § 1B1.13 was no longer controlling").  But see United States v. Bryant, 996 F.3d 1243, 1247 (11th Cir. 2021)("The Commission's standards are still capable of being applied and relevant to all Section 3582(c)(1)(A) motions, whether filed by the [Bureau of Prisons] or a defendant. . . .  1B1.13 is still an applicable policy statement for a Section 3582(c)(1)(A) motion, no matter who files it.").

The 2023 amendments expressly "revise[] § 1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and [Bureau of Prisons]-filed motions."  88 Fed. Reg. 28256-57.  Compare U.S.S.G. § 1B1.13(a) (2018)(amended 2023) ("Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."), with U.S.S.G. § 1B1.13(a) (2023) ("Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . .").  Under § 1B1.13, courts still may decide on their own what constitutes extraordinary and compelling reasons, but, where a court recognizes a circumstance that is not identified specifically in the policy statement, the circumstance must be comparably serious to the identified reasons to be "consistent" with the policy statement.  18 U.S.C. § 3582(c)(1)(A).  See U.S.S.G. § 1B1.13(b)(5) (clarifying that courts may conclude that "extraordinary and compelling reasons exist" where "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the [explicitly identified extraordinary and compelling] reasons . . . are similar in gravity to the [explicitly identified extraordinary and compelling reasons").  In addition, the 2023 amendment expands the list of "extraordinary and compelling reasons" in § 1B1.13's application

notes in numerous ways.  For example, the amendment: (i) revises the "Medical Circumstances of the Defendant" subsection to include "medical circumstances not expressly identified in § 1B1.13 that were most often cited by courts in granting sentence reduction motions during the pandemic"; (ii) adds a new provision for cases in which a defendant's parent is incapacitated to the "Family Circumstances" subsection; (iii) and creates new subsections for "unusually long sentences" and for defendants who have been victims of "sexual assault perpetrated by [Bureau of Prisons] personnel."  88 Fed. Reg. 28257.

The current U.S.S.G. § 1B1.13 reads, in full:

**(a)**    **In General**. -- Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that --

**(1)**    **(A)**    extraordinary and compelling reasons warrant the reduction; or

**(B)**    the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

**(2)**    the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

**(3)**    the reduction is consistent with this policy statement.

**(b)**    **Extraordinary and Compelling Reasons.** -- Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

**(1)**    **Medical Circumstances of the Defendant.** --

**(A)**    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death

within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(B)** The defendant is --

**(i)** suffering from a serious physical or medical condition,

**(ii)** suffering from a serious functional or cognitive impairment, or

**(iii)** experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

**(D)** The defendant presents the following circumstances --

**(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

**(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

**(iii)** such risk cannot be adequately mitigated in a timely manner.

**(2)** **Age of the Defendant.** -- The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(3)** **Family Circumstances of the Defendant.** --

- 25 -

**(A)**     The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

**(B)**     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(C)**     The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

**(D)**     The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

**(4)     Victim of Abuse.** -- The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

**(A)**     sexual abuse involving a "sexual act," as defined in 18 U.S.C. 2246(2) (including the conduct described in 18 U.S.C. 2246(2)(D) regardless of the age of the victim); or

**(B)**     physical abuse resulting in "serious bodily injury," as defined in the Commentary to § 1B1.1 (Application Instructions);

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

**(5)     Other Reasons.** -- The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or

together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

**(6)   Unusually Long Sentence.** -- If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

**(c)   Limitation on Changes in Law.** -- Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

**(d)   Rehabilitation of the Defendant.** -- Pursuant to 28 U.S.C. 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

**(e)   Foreseeability of Extraordinary and Compelling Reasons.** -- For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

U.S.S.G. § 1B1.13.

**3.   <u>The 18 U.S.C. § 3553(a) Factors.</u>**

At the third step of the three-part compassionate release test, courts must consider "the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A), and "determine whether . . . the reduction authorized by [steps one and two] is

warranted in whole or in part under the particular circumstances of the case," McGee, 992 F.3d at

1042 (quoting United States v. Jones, 980 F.3d at 1107)(brackets in McGee and United states v.

Jones).   "Section[] 3553(a) describes the factors courts should consider when sentencing

defendants."   United States v. Eccleston, 543 F. Supp. 3d at 1147.   Specifically, Congress has

directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to

comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A)    to reflect the seriousness of the offense, to promote respect for the law, and
> to provide just punishment for the offense;
>
> (B)    to afford adequate deterrence to criminal conduct;
>
> (C)    to protect the public from further crimes of the defendant; and
>
> (D)    to provide the defendant with needed educational or vocational training,
> medical care, or other correctional treatment in the most effective
> manner . . . .

18 U.S.C.   § 3553(a)(2)(A)-(D).   See   18 U.S.C.   § 3551   ("[A]   defendant . . . shall   be

sentenced . . . so as to achieve the purposes set forth in subparagraphs (A) through (D) of section

3553(a)(2) . . . .").   To achieve these purposes, § 3553(a) directs sentencing courts to consider:

(i) the Guidelines;[10] (ii) the nature of the offense and of the defendant's character; (iii) the

available sentences; (iv) the policy favoring uniformity in sentences for defendants who commit

similar crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States

---

[10]Although the Guidelines are no longer mandatory, see United States v. Booker, 543 U.S.
220, 261 (2005), both the Supreme Court and the United States Court of Appeals for the Tenth
Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a)
enumerates, they are entitled to careful consideration, see Rita v. United States, 551 U.S. 338, 349
(2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens
of thousands of sentences and worked with the help of many others in the law enforcement
community over a long period of time in an effort to fulfill [its] statutory mandate."); United States
v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor
among many").   The Guidelines are significant, because "the Guidelines are an expression of
popular political will about sentencing that is entitled to due consideration . . . ."   United States v.
Cage, 451 F.3d at 593.

Sentencing Commission policy statements in effect on the date of sentencing.  See 18 U.S.C. § 3553(a)(1), (3)-(7).  "[T]he Supreme Court has determined that courts may consider post-sentencing conduct in assessing the § 3553(a) factors when considering whether to adjust a previously imposed sentence."  United States v. Allen, 956 F.3d 355, 358 (6th Cir. 2020)(citing Pepper v. United States, 562 U.S. 476, 487-93 (2011)).  See United States v. Gonzales, 547 F. Supp. 3d at 1139 ("The Court . . . will apply the § 3553(a) factors to Gonzales' pre-sentencing conduct as well as his conduct after the Court imposed his sentence in 2016."); United States v. Eccleston, 543 F. Supp. 3d at 1148-51 (concluding that the defendant's post-conviction history, including complete lack of disciplinary record and significant rehabilitation programming while incarcerated, outweighed the defendant's pre-conviction criminal history, particularly considering the defendant's young age at the time he committed the offense of conviction).

## LAW REGARDING THE FIRST STEP ACT

A federal district court may modify a defendant's sentence where Congress specifically has authorized a court to modify a sentence.  See 18 U.S.C. § 3582(c)(1)(B)(permitting a court to modify an imposed term of imprisonment "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure");[11] United States v. Blackwell, 81 F.3d

---

[11]Rule 35 of the Federal Rules of Criminal Procedure outlines the circumstances under which a court may correct or reduce a sentence.  See Fed. R. Crim. P. 35.  Rule 35(a) permits a court, within fourteen days after sentencing, to correct a sentence "that resulted from arithmetical, technical, or other clear error."  Fed. R. Crim. P. 35(a).  Rule 35(b)(1) permits a court, upon the government's motion made within one year of sentencing, to reduce a sentence if the defendant, "after sentencing, provided substantial assistance in investigating or prosecuting another person."  Fed. R. Crim. P. 35(b).  Rule 35(b)(2) permits the court to reduce a defendant's sentence upon the government's motion made more than one year after sentencing if the defendant's substantial assistance involved information either not known to the defendant until one year or more after sentencing, information which the defendant provided to the government within one year after sentencing, but which did not become useful until more than one year after sentencing, or information the usefulness of which the defendant could not have reasonably anticipated until more than one year after sentencing, and which the defendant promptly provided to the government after its usefulness became reasonably apparent to the defendant.  See Fed. R. Crim. P. 35(b)(2)(A)-(C).

945, 947 (10th Cir. 1996)("A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.").  See also United States v. Hardage, 58 F.3d 569, 574 (10th Cir. 1995)("[W]ith the exception of certain powers which truly fit the rubric of 'inherent power.' . . . federal courts cannot act in the absence of statutory authority."); United States v. Caterino, 29 F.3d 1390, 1394 (9th Cir. 1994)("The authority to change a sentence must derive from some federal statutory authority.").

On December 21, 2018, President Donald J. Trump signed the First Step Act into law.  See First Step Act.  The First Step Act's § 404 makes the Fair Sentencing Act sections 2 and 3, Pub. L. No. 111-220, §§ 2-3, 124 Stat. 2372, 2372 (2010)("Fair Sentencing Act") retroactive.  See First Step Act § 404.  The full text of the First Step Act's § 404 is as follows:

### SEC. 404.    APPLICATION OF FAIR SENTENCING ACT.

(a)    DEFINITION OF COVERED OFFENSE. -- In this section, the term "covered offense" means a violation of a Federal Criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

(b)    DEFENDANTS PREVIOUSLY SENTENCED. -- A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c)    LIMITATIONS. -- No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act § 404.  The full text of the Fair Sentencing Act's §§ 2 and 3 is as follows:

### SEC. 2.          COCAINE SENTENCING DISPARITY REDUCTION.

(a)          CSA. -- Section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) is amended --
> (1)          in subparagraph A(iii), by striking "50 grams" and inserting "280 grams"; and
> (2)          in subparagraph (B)(iii), by striking "5 grams" and inserting "28 grams".

(b)          IMPORT AND EXPORT ACT. -- Section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)) is amended --
> (1)          in paragraph (1)(C), by striking "50 grams" and inserting "280 grams"; and
> (2)          in paragraph (2)(C), by striking "5 grams" and inserting "28 grams".

### SEC. 3.          ELIMINATION OF MANDATORY MINIMUM SENTENCE FOR SIMPLE POSSESSION.

Section 404(a) of the Controlled Substances Act (21 U.S.C. 844(a)) is amended by striking the sentence beginning "Notwithstanding the preceding sentence,".

Fair Sentencing Act §§ 2-3.

Section 404 is the only First Step Act provision that applies retroactively to already sentenced defendants.  See First Step Act § 404.  See also United States v. Gonzalez-Oseguera, Crim. No. 06-00593 HG-01, 2019 WL 1270916, at *1 (D. Haw. March 19, 2019)(Gillmor, J.)(stating that "[t]here are a number of reforms in the First Step Act, but Section 404 is the only provision that applies retroactively to defendants who have already been sentenced").  Section 404 permits a federal district court to resentence a defendant based on the Fair Sentencing Act's revised statutory penalties for crack cocaine offenses.  See First Step Act § 404.  To be eligible for relief under the First Step Act's § 404, a defendant must have been convicted and sentenced for a covered offense, as defined in the First Step Act's § 404(a).  See First Step Act § 404(a).  To be convicted of a covered offense, a defendant (i) must have been convicted for violating a federal criminal statute, for which the Fair Sentencing Act's §§ 2-3's

modified the penalties; and (ii) have committed that offense before August 3, 2010.  See First Step Act § 404(a); United States v. Mannie, 971 F.3d 1145, 1147-48 (10th Cir. 2020)(concluding that a defendant is eligible for a reduction under the First Step Act where "he or she was convicted of and sentenced for (1) a violation of a federal criminal statute, (2) the statutory penalties for which were modified by section 2 or 3 of the 2010 [Fair Sentencing Act], and (3) that was committed prior to August 3, 2010").  See also United States v. Gonzalez-Oseguera, 2019 WL 1270916, at *2 (stating that the defendant is not convicted of a covered offense, because defendant is convicted of an offense involving methamphetamine, for which the Fair Sentencing Act's §§ 2-3 does not modify the statutory penalties); United States v. Drayton, No. CR 10-20018-01-KHV, 2019 WL 464872, at *2 (D. Kan. February 6, 2019)(Vratil, J.)(concluding that the court lacks jurisdiction to reduce the defendant's sentence under the First Step Act, where the defendant is convicted of an offense involving powder cocaine and marijuana).  The First Step Act includes two exceptions: "'No court shall entertain' a 2018 [First Step Act] motion if (1) an offender's sentence for the covered offense was previously imposed or reduced in accordance with section 2 or 3 of the 2010 [Fair Sentencing Act], or (2) the court has already denied a previous 2018 [First Step Act] motion 'after a complete review of the motion on the merits.'" United States v. Mannie, 971 F.3d at 1152 (quoting First Step Act § 404(c)).  The statute of conviction, not the defendant's conduct, controls First Step Act eligibility.  See, e.g., United States v. Davis, 423 F. Supp. 3d 13, 17 (W.D.N.Y. 2019)(Skretny, J.)(rejecting the United States' argument that a defendant is not First Step Act eligible, because, if the Fair Sentencing Act had been in place when the offense was convicted, the indictment would have alleged a greater quantity of drugs as required to trigger the penalties, because "it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act").

Although a defendant may be eligible for First Step Act relief, whether that relief is warranted is a separate inquiry.  See First Step Act § 404(c) ("nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section").  The First Step Act is silent regarding what a court may consider in determining whether resentencing of a First Step Act-eligible defendant is warranted.  See First Step Act § 404.  The Tenth Circuit explains that the First Step Act authorizes modification to a sentence under 18 U.S.C. § 3582(c)(1)(B), but does not authorize plenary resentencing.  See United States v. Brown, 974 F.3d 1137, 1144 (10th Cir. 2020). Section 3582(c)(1)(B) permits modification of an imposed imprisonment term to the extent "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B).  The Supreme Court explains that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence.  See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022).  This consideration extends to the defendant's relevant conduct after his or her original sentencing.  See Concepcion v. United States, 142 S. Ct. at 2402-03.  The Tenth Circuit further directs courts to consider the Guidelines as they existed at the defendant's original sentencing, but to interpret the Guidelines in line with intervening changes in law.  See United States v. Brown, 974 F.3d at 1144-45.  Courts also may use their discretion to consider the § 3553 sentencing factors. See United States v. Brown, 974 F.3d at 1145-46, 1146 n.5 (citing United States v. Mannie, 971 F.3d 1145, 1158 n.18 (10th Cir. 2020)); United States v. Robertson, 837 F. App'x 639, 641 (10th Cir. 2020).[12]  The First Step Act does not mandate the defendant's presence at a hearing, see First

---

[12]United States v. Robertson is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored.

Step Act § 404, and the Tenth Circuit has announced that a defendant moving for resentencing is not entitled to a hearing.  See United States v. Mannie, 971 F.3d at 1157; United States v. Brown, 974 F.3d at 1144 n.2 ("Given that the First Step Act operates through § 3582(c)(1)(B), resolution of the underlying legal issue in this case does not require an in-person hearing.").

### ANALYSIS

First, the Court concludes that it has the power to terminate mandatory minimum terms of supervised release.  Second, to determine whether to exercise that power here, the Court weighs the factors under 18 U.S.C. § 3583(e)(1) for granting early termination of supervised release once the movant completes one year of supervised release.  Because Varela completes over a year of supervised release and meets the factors under 18 U.S.C. § 3583(e)(1), the Court grants early termination.

## I.   THE COURT HAS THE POWER TO TERMINATE VARELA'S MANDATORY MINIMUM TERM OF SUPERVISED RELEASE.

The United States argues that the court cannot terminate Varela's five-year term of supervised release because it is the mandatory minimum for his conviction of drug trafficking conspiracy in violation of 21 U.S.C. § 841(b)(1)(A) and 21 U.S.C. § 841(b)(1)(B).

Because the Tenth Circuit has not decided whether courts can terminate a mandatory minimum term of supervised release, the Court relies on the Sixth Circuit's holding in Spinelle, which has similar facts to this case.  The defendant Spinelle similarly seeks early release of his

---

However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that United States v. Robertson, Crawford v. Booker, 229 F.3d 1162 (table), 2000 WL 1179782 (10th Cir. 2000), and United States v. Taylor, 724 F. App'x 665 (10th Cir. 2018), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

three-year mandatory term of supervised release, and the United States similarly challenges the district court's early release, arguing that the district court has no discretionary authority under 18 U.S.C. § 3583(e)(1) to terminate a mandatory term of supervised release.  See Spinelle, 41 F.3d at 1057.  The Sixth Circuit notes that Congress divides the sentencing phases into two: (i) sentencing; and (ii) post-sentence modification.  See Spinelle, 41 F.3d at 1059.  It further explains:

> When Congress subsequently amended 18 U.S.C. § 3583(a) to require that courts impose a term of supervised release on a defendant if such a term is required by statute, it only partially limited a court's discretionary authority to impose the sentence.  Congress did not alter the court's separate authority to terminate a sentence of supervised release, under 18 U.S.C. § 3583(e)(1), if the conduct of the person and the interest of justice warranted it.

Spinelle, 41 F.3d at 1059 (emphasis in original).  Thus, "[t]he statute mandating a specific sentence of supervised release and the statute authorizing the termination of a prior imposed sentence are quite consistent."  Spinelle, 41 F.3d at 1060.  The Court agrees with the Sixth Circuit's conclusion in Spinelle that the Court can terminate a mandatory minimum term of supervised release, because the court's discretionary authority to terminate supervised release under 18 U.S.C. § 3583(e) is "consistent" with statutes imposing mandatory minimum terms of supervised release.  Spinelle, 41 F.3d at 1060.  Both statutes can exist without contradicting each other.  See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 180 (2012) ("Hence there can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously.").  A mandatory minimum term of supervised release is relatively rare and reflects a strong Congressional judgment to impose adequate deterrence and punishment, but a court's discretionary authority to terminate a term of supervised release -- including mandatory minimums -- reflects equally Congress' intent.  In enacting 18 U.S.C. § 3583(e) and not amending it despite amending other provisions within 18 U.S.C. § 3583, Congress intends to give the court discretionary authority to terminate supervised release if the court concludes that the defendant's

performance after completing one year, among other considerations, justify early termination.  The Court's view is consistent with the Sixth Circuit's reasoning in Spinelle, the Seventh Circuit and all other district courts that follow Spinelle's reasoning, and the prevailing method of interpreting seemingly conflicting statutes in harmony.

Furthermore, the court's ability to grant compassionate release in the face of mandatory minimum sentences supports a similar approach to terminating early supervised release.  Courts have the authority to reduce an inmate's sentence upon finding of "extraordinary and compelling reasons," among other required factors.  18 U.S.C. § 3582(c)(1).  See, e.g., United States v. Rodriguez, 451 F. Supp. 3d 392, 407 (E.D. Pa. 2020)(Brody, J.) (granting release to inmate whose extensive criminal history is mostly composed of low-level drug dealing, adding that predicate offenses to his mandatory minimum sentences are nonviolent; further, he has shown rehabilitation and good conduct over past seventeen years).  18 U.S.C. § 3582(c)(1)(A) permits courts to modify a term of imprisonment when, "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that -- (i) extraordinary and compelling reasons warrant such a reduction; [. . .] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [. . .]."  18 U.S.C. § 3582(c)(1)(A).  See also U.S.S.G. § 1B1.13 (promulgating a policy statement on compassionate release motions).  The Tenth Circuit establishes that, under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a term of imprisonment, even if that length is shorter than the mandatory minimum.  See Maumau, 993 F.3d at 837.  In Maumau, the Tenth Circuit upholds the district court's reduction of the defendant's sentence from a fifty-seven-year mandatory minimum to a fifty-five-year sentence.  See 993 F.3d at 826.  There, the United States argues that the district court has no authority to grant compassionate release based on a disagreement with the length of a mandatory sentence.  See Maumau, 993 F.3d at 829.

The Tenth Circuit rejects the United States' argument, noting that the district court's decision is not based on disagreement with the length of a mandatory sentence, but rather is because "extraordinary and compelling reasons" warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13. Maumau, 993 F.3d at 837. The Tenth Circuit notes factors such as the defendant's young age at the time of sentencing, the "incredible" length of his stacked mandatory sentences, the elimination of sentence stacking under the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018)("First Step Act"), and that the defendant would have received a shorter sentence were he sentenced today. See Maumau, 993 F.3d at 837. The Tenth Circuit's upholding of compassionate release even when the defendant has a mandatory minimum sentence supports a similar approach with early termination of supervised release. 18 U.S.C. § 3583(e)(1)'s discretionary authority to terminate early supervised release, after weighing several factors, serves a similar function as 18 U.S.C. § 3582(c)(1)(A). Indeed, a court's ability to grant compassionate release from a mandatory minimum sentence, if the factors justify it, further supports doing so in a supervised release context, where the sentencing consequences are less severe. Following Spinelli and compassionate release's similar approach in sentencing, the Court concludes that it has the discretionary authority, under 18 U.S.C. § 3583(e), to terminate Varela's mandatory minimum term of supervised release after completing one year.

## II. VARELA MEETS THE FACTORS FOR EARLY TERMINATION OF SUPERVISED RELEASE UNDER 18 U.S.C. § 3553.

The first factor that the Court examines is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The second factor is "the need for the sentence imposed." 18 U.S.C. § 3553(a)(2). In analyzing the second factor, the district court considers what sentence adequately reflects the offense's seriousness, promotes

respect for the law, provides just punishment for the offense, adequately deters criminal conduct, protects the public, and provides the defendant with educational or vocational training, medical care, or other correctional treatment.  See 18 U.S.C. § 3553(a)(2)(A)-(D).

In United States v. Hernandez-Flores, the Court's first factor analysis supports keeping Hernandez-Flores on supervised release.  The Court notes that she committed serious Class B felonies, and her "lengthy criminal history" includes six offenses between when she was fifty and her current age of sixty-nine years old.  Hernandez-Flores, 2012 WL 119609 at *5.  The Court also notes that she committed "serious crimes" of cocaine and methamphetamine possession when she was over fifty.  Hernandez-Flores, 2012 WL 119609 at *5.  In contrast, here, while the "nature and circumstances" of Varela's offense are serious given that he led a fifteen-person drug trafficking organization and drug trafficking conspiracy in the Albuquerque area, Varela's "history and characteristics" indicate that he has no history of violence or foreseeable risks to public safety. Varela has a criminal history score of 0 and a criminal history category of I.  See PSR ¶ 145, at 46. The first factor overall supports early termination.

In Hernandez-Flores, the Court's second factor analysis determines that keeping Hernandez-Flores on supervised release "help[s] protect the public, as her age does not appear to deter her from committing criminal activity."  2012 WL 119609 at *5.  In contrast, here, keeping Varela on supervised release would not have the same effect of deterring the commission of criminal activity.   As the USPO notes, Varela complies with the conditions of supervised release and is not a threat to the public.  See Tr. at 21:3-12 (USPO Escobedo).  While the mandatory minimum term of supervised release adequately reflects the seriousness of Varela's offense, promotes respect for the law, and provides just punishment for the offense, continued supervised release would not additionally provide the defendant with training, care, or treatment to as to

warrant continuing supervised release.  The USPO notes that Varela "demonstrates the ability to self-manage beyond a period of supervision."  Tr. at 21:3-12 (USPO Escobedo).  Varela's post-sentence conduct reduces the need for his imposed term of supervised release under the second factor.  Early termination of his supervised release is in the interest of justice here.

Finally, because Varela has served thirty-six months of supervised release, the USPO's presumption in favor of recommending early termination for persons who have served over eighteen months of supervised release applies.  See AO, Guide to Judiciary Policy, Vol. 8, Part E, § 360.20.  The USPO finds that all of the criteria are met here to recommend early termination, for the reasons that Varela is not a risk to the public and does not have a risk of continued violations.  The Court agrees with the USPO's recommendation and exercises its discretion to terminate early Varela's mandatory minimum term of supervised release.

**IT IS ORDERED** that the Motion for Early Termination of Supervised Release, filed June 6, 2024 (Doc. 958), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M. M. Uballez
   United States Attorney
Timothy S. Vasquez
   Assistant United States Attorney
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Marshall Ray
Law Offices of Marshall J. Ray, LLC
Albuquerque, New Mexico

-- and --

Robert J. Gorence
Gorence Law Firm, LLC
Albuquerque, New Mexico

    *Attorneys for the Defendant*